SADIE M. KELLY, Respondent, v. DANIEL DOODY, Appellant.

B., the owner of certain premises in the city of B., built thereon a block of houses and contracted with W. to plumb them and connect with the water main. B., becoming involved, failed to make the payments due W. B. had consented that the rents of one of the houses which had not yet been connected with the street main might be paid over to defendant's firm to apply upon a debt he owed them; the tenant, threatening to leave the house unless the water connection was made, defendant spoke to W. in regard thereto and was informed that the failure to make the connection was for want of laborers to dig the trench; upon defendant promising to find him a laborer, W. agreed to make the connection. Defendant told one D., who applied to him for work, that he thought W. would give him a job at digging. D. went to W., who sent one of his employes with him to show where and how to dig the trench, and D. afterwards did the digging, reported it to W. and was sent back to cover up the hole; he claimed of W. payment for the work, W. did not deny his liability to pay, but did not pay him until after the first trial of this action. D., some time after doing the digging, went to work for defendant's firm. W. applied and paid for the necessary permit to make the connection. During the interval between the digging and covering the ditch plaintiff fell into it and was injured. In an action to recover damages, *held*, that defendant was not liable; that it was not enough to render him liable to show that he desired the work done or was interested in having it done, or that the contractor was moved to have it done by his suggestion; it must appear that the person doing it or the contractor directing it was defendant's servant and subject to his direction and control.

Plaintiff lived in the building adjoining the one being connected with the main, saw the trench dug and knew of its existence. She testified that she passed over it about an hour before, but, at the time of the accident, her attention was diverted by a card in the window of the house. The court, upon plaintiff's request, charged that plaintiff's negligence was not in the case; if she had been negligent, it would be no defense. *Held*, error.

*Clifford* v. *Dam* (81 N. Y. 52) distinguished.

The court also charged that the jury were not bound to conclude from the fact that W. took out the permit to make the connection that he intended to make it under his contract with B. if they could find in the evidence any other motive. *Held*, error.

Defendant offered to prove by W. that the digging was done under the contract with B. and that W. had no contract with anyone else when it was done. This was excluded under plaintiff's objection. *Held*, error.

(Argued November 1, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made February 28, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought to recover damages which plaintiff alleges she sustained through the negligence of the defendant's servants in digging a trench in the sidewalk on Seventeenth street in the city of Brooklyn, and leaving the same without sufficient guard or warning, by reason of which the plaintiff, on the 5th day of April, 1885, and without any fault or negligence upon her part, in passing along the sidewalk fell into the pit and was injured.

The answer was a denial, and allegations that the injury was due to plaintiff's fault and negligence.

The evidence upon the trial showed this state of facts : One Bush built a block consisting of five tenements, and had contracted with one Warren to plumb the tenements and connect them with the water-main in the street; he had finished the plumbing and connections with three of the tenements under the contract, and was proceeding with some degree of dilatoriness with the plumbing and making the water connections with the other two. All that remained to be done to perform the entire contract was to make the connection between two of the houses and the main; the cost of these connections would be about $50. Mr. Bush had made default in making payments in proportion to the progress of the work; the contract-price was $625 and Bush had paid some $325. He was embarrassed and had mortgaged the block to secure his creditors or some of them; he was also owing defendant's firm for some of the materials in the block. The tenements, or all save one, were leased by Bush or his agent. Bush had consented that the collector of the rents of the house into which the water was yet to be conducted might pay it over to defendant's firm upon the debt Bush owed them. The tenant of that house complained that the water was not conducted into it, and talked of leaving the house for that reason. Bush's collector

communicated this to the defendant; he replied he would see the owner of the block or the contractor upon the matter and see if it could not be remedied. Defendant spoke to Warren and inquired why he did not make the connection; the reply was that his failure to do so was for want of laborers to dig the channel to receive the water pipe. Defendant asked him if he would do it if he would find a laborer for him to dig the trench and the contractor promised he would then make the connection. Shortly after, a laborer, Thomas Donovan, applied to defendant to drive the team of defendant's firm in its business, or to do some labor for the firm, and defendant informed him that the firm did not want his labor at the present time, but he thought he could have a job at digging if he went to Warren; this he did and Warren sent one of his employes with Donovan to show where and how to dig the trench. Donovan did the digging and afterwards reported it to Warren, who sent him back to cover the hole he had dug. Donovan claimed of Warren for one and a half days labor in so doing; he did not deny his liability to pay, but did not, until after the first trial, pay him, and defendant never paid him for the digging. Some little time after doing the digging Donovan went to work for defendant's firm, and was so employed when the first trial took place, but not when the last trial was had. The contractor, Warren, applied to the authorities for the necessary permit to tap and connect the block of tenements with the water-main in the street. In May following, Warren re-opened the hole and connected the water pipes. Mr. Bush spoke to Warren about finishing up in the summer after the accident, when he finally finished it up.

Further facts appear in the opinion.

*W. W. MacFarland* for appellant. Whether Warren did or did not do the work under his contract was a question of intention, and when that is relevant and material it is a pure question of fact as to which the witness may be asked directly. (*Tracy* v. *McManus*, 58 N. Y. 57; *Kerrains* v. *People*, 60 id.

221.) It was error to exclude the testimony of Donovan (1), as to the person for whom he did the digging; (2) whether the defendant told him to do it or not; (3) and whether the defendant hired him or not. (*Knapp* v. *Smith*, 27 N. Y. 277; *Nicolay* v. *Unger*, 80 id. 54.)

*Josiah T. Mareau* for respondent. If Donovan, in making the excavation, was the servant of the defendant, the defendant was liable; for the excavation, not having been filled on the day it was made, was a nuisance, the license to make it, if any, available to the defendant being expressly conditioned on its not being left open over night, and there being no allegation or proof, and the defendant not claiming, that the plaintiff wantonly or purposely subjected herself to danger. (*Clifford* v. *Dam*, 81 N. Y. 52; *Irvine* v. *Wood*, 51 id. 228; *Congreve* v. *Smith*, 18 id. 78; *Congreve* v. *Morgan*, 18 id. 84; *Creed* v. *Hartman*, 29 id. 591.) The interpretation of a written instrument is usually for the court, but the meaning to be assigned to spoken words is always for the jury when they are capable of two meanings. (Wells on Questions of Law and Fact, § 75.)

POTTER, J. From the foregoing statement of the evidence it will be seen, that the plaintiff sought to establish a liability upon the part of the defendant for the damages she had sustained, by disregarding the real and ordinary relations between the parties to this transaction and substituting others somewhat inconsistent. Bush had erected and was the owner of the block embracing five houses or tenements and, as such, had made a contract with one Warren to plumb and connect the same with the water main in the street to furnish the same with water, and Warren had obtained the proper permit of the authorities for that purpose, and which I apprehend is usually granted to plumbers. The plumber had plumbed the houses and connected all of them with the main, except two, and had been paid upon the contract about one-half of the price agreed upon for the entire work. The defendant was a creditor of the owner, and, by consent of the :owner, was

receiving the rent of the tenements, or of some of them, to apply upon the debt due his firm from the owner. The consent to receive and apply the rent was verbal and for no specified period of time. One Donovan dug the trench for the pipe to connect the main pipe with one of the houses. The excavation was not sufficiently covered during the interval of time, some ten days, between the digging and the filling of it, and during that period the plaintiff, who resided in the tenement of the block next to the one to be connected with the main through the excavation, and who saw it dug and was well aware of its existence and condition, while passing after dark along the sidewalk across which the excavation had been made, fell into it and sustained a very painful and permanent injury.

It is sought in this action, passing by the owner who had a permanent interest to be served and had contracted to pay for the work, the contractor who agreed to do it, to furnish the material and had nearly completed it, and had the permit, and the digger, who dug and left the excavation insufficiently protected, to fix the liability for the injury and damages to the plaintiff *upon the defendant.* The theory upon which it is sought to fix this liability upon the defendant is that he was the employer and principal of Donovan, who dug the trench, and perhaps also of Warren, the plumber, and that having dug the trench it was his duty to fill it, for the negligence causing the injury was in not replacing rather than removing the filling.

The evidence of the employment of the digger and of the plumber by defendant to put in the service pipe is of a very slight and unsatisfactory character, and is, moreover, quite inconsistent with the contractual relations existing between the owner of the buildings and the plumber. It became very manifest, in the progress of the trial, that this theory might not certainly fix the liability upon the defendant, and so resort was had to another, which, while it resembles the master-and-servant theory, is much attenuated, and seems to me to be somewhat extraordinary in this class of cases; and that is this, in

the language of the learned judge's charge. "If Doody, for his own interest, in order that he might realize rent, desired that Warren should make the connections, and if that desire was communicated by him to Warren, with the intention to set Warren in motion to make it, that is, make the connection (the mere form of words used is not material), and if that communication of his desire, together with his active agency in finding and sending a man to do the digging, if that, and not the obligation of the contract with Bush, was the sole effective procuring cause which moved Warren to dig the hole, or to set Donovan to dig it, then Doody was the responsible author of the hole. I will stop here a moment. If this communication of his desire, and his active agency in sending a man, was not the promoting cause, but the contract with Bush; if Warren did it because he had a contract with Bush to do it, and that was what moved him to do it, then Mr. Doody would not be responsible. You understand, I think, but I call your attention specially to that. Then the counsel proceeds with his proposition : 'And if in that case Doody knew, or had good reason to believe, that the hole had been dug, it was his duty to see that it was filled up at farthest within twenty-four hours after such notice, or it became a public nuisance, of which he was the responsible author or maintainer, and liable for the consequences to the plaintiff.' That is a proposition of law which I will submit to you, and you are to apply it to the facts, whether this was caused in the way contemplated by that question or some other."

It is not necessary, in the result I have reached, to analyze this theory of the charge or to apply it to the evidence in this case, or to decide that it was erroneous in law; but I am quite sure it will impress every experienced trial judge who is conversant with the proneness of human nature, whether inside or outside of the jury box, to sympathize with the sufferings of another, and to bestow benefits upon them, if not out of their own, then out of another's pocket, and if out of another's, then out of that one who is most able, though perhaps the

least liable, to pay it.   But I am satisfied that there were in the working out of the plaintiff's theories several fatal errors committed both in the charge and the rulings upon the evidence, and to which exceptions were duly taken.

The court, upon the request of plaintiff, charged that "Plaintiff's negligence was not in the case.  If she had been negligent it would be no defense."  This was error.   The complaint charged the defendant with negligence through his servant in making and maintaining this hole, and that plaintiff, without fault on her part, fell into it.   Moreover, the action does not belong to that class of actions where the obstruction in a street is without authority and wholly wrongful, such as the case of (*Clifford* v. *Dam*, 81 N. Y. 52.) and the cases there cited.

In this case the excavation was permitted by the public authorities, and the party making or maintaining the obstruction only becomes liable for his negligence in the use of the privilege.   The pleadings show that this action is based upon and involves the care and negligence of both parties to the action.   Besides, evidence was given by the plaintiff herself that she saw the man at work digging the trench, and saw the trench daily or nearly so, and had safely passed over the trench only an hour or two before, but that her attention was diverted from it on the occasion of the accident by a card in the window of the house near the excavation.

The same error, or kind of error, occurred when the court charged the jury "that if it was mere inattention or negligence, that does not preclude her recovery."

The charge, in many respects, if not positively erroneous, was entirely misleading to the jury in a case of this character. "The jury are not bound to conclude from the fact that Warren, on February 9, 1885, took out a permit to make this connection, that he intended to make it under his contract with Bush, if they can find in the evidence any other motive for taking out the permit."

What other motive could, from the evidence in the case, have been operating upon the mind of Warren to take out the permit other than the contract for the plumbing with Bush,

the owner, unless plumbers in the city of Brooklyn are in the habit of taking out and paying some $35 for a permit for houses generally that have not been connected with the water service, and trusting to the chance of getting a contract later on for the plumbing? The tendency, if not the object of the remark, was to remove the force of the fact that Warren was bound by the contract with Bush, for, at the date of the permit, there is no evidence that defendant ever saw Warren.

The charge was also erroneous or misleading, " whether the tenant in this tenement was the tenant of Doody or of Bush. The material question is, whether Doody had an interest to serve in getting the connection made, about which the parties agree, since he was entitled to the rent of the house."

The court was balancing the interest of Bush, the owner, and who had concededly made a contract with Warren to plumb the house, against that of defendant, who had no legal right to the rent that he could enforce, and to lead the jury to think that defendant might have made such a contract.

It was error to refuse defendant's request to charge " that it is not enough to render the defendant liable for the injury in question to show that he desired or wished the work to be done, or that he was interested in having it done, or that Warren, the plumber, was moved to make the connection by the suggestion of the defendant, but it must appear that the person doing the work was the servant of the defendant."

It was error to refuse the defendant's request " to render the defendant liable for the act of Warren in opening the street, it must appear that in doing so he was the agent or servant of the defendant, was in his employ, and subject to his direction and control," and the charge made instead of that requested was, if not erroneous, misleading to the jury.

The modified charge suggests that the defendant might have moved Warren, as the contractor with Bush, to make the excavation, that is, to do what he had agreed with Bush to do. Now, I apprehend that Bush himself would not be liable for the improper manner in which Warren, his independent contractor, might do the work. Much less would the defendant

be liable for the manner in which the independent contractor of Bush should perform his contract with Bush, either to Bush or anyone else.

The case, as presented by the charge, is liable to lead the jury to think that Donovan was the defendant's servant in digging the hole, but if not, then Warren was the defendant's servant, although Warren had a contract with Bush to do the entire job, including the digging of the hole, and which contract was, at the time, in force, so far as the evidence discloses.

The defendants sought, in order to meet these theories of the plaintiff, to show by Donovan that he did not employ or direct Donovan, in regard to digging the trench, to ask Donovan who did employ him to dig the hole, and by his own testimony, that he did not employ or direct Donovan in that regard or say anything to anybody about opening the street; and by Warren that when he set Donovan to work digging, he was acting under the Bush contract, or whether he (Warren) had any contract with any other than Bush, to connect the water main with the house. All these questions were objected to by plaintiff and overruled. Some of them, at least, were, it seems to me, improperly overruled within the principle decided in *Knapp* v. *Smith* (27 N. Y. 277–281). In that case it was held (Judge DENIO writing the opinion of the court) that overruling this question, " For whom did your husband do what business he did after you took the deed," etc., was error. In *Sweet* v. *Tuttle* (14 N. Y. 465–472) it was held (Judge COMSTOCK writing the opinion of the court) that this question " on the part and behalf and for whom did the defendant do what he did that fall in relation to the wreck of the Phœnix ? " was proper. Clearly, within these decisions, it was competent for Warren to testify that the digging was done under the Bush contract and that Warren had no contract with any other than Bush when it was done.

I think the judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except HAIGHT, J., not sitting.

Judgment reversed.